**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone:  (602) 277-0157
Facsimile:  (602) 230-9250

TOD F. SCHLEIER, ESQ.  #004612
Email: tod@schleierlaw.com
BRADLEY H. SCHLEIER, ESQ.  #011696
Email: brad@schleierlaw.com

*Attorneys for Plaintiff Gary Pearlmutter*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Pearlmutter, a married man, | ) Case No.: |
| | ) |
| Plaintiff, | ) |
| v. | ) **COMPLAINT** |
| | ) |
| Coconino County, a governmental entity; | ) **Jury Trial Demanded** |
| James Jayne, a married man; and  Marie | ) |
| Peoples, a married woman, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Gary Pearlmutter, for his Complaint makes the following allegations against Defendant Coconino County, Defendant James Jayne, and Defendant Marie Peoples as follows:

**JURISDICTION AND VENUE**

1.     This is an action against Defendant Coconino County, Defendant James Jayne, and Defendant Marie Peoples to remedy the deprivation of Plaintiff Gary Pearlmutter's federally protected rights and rights protected by the laws of the State of Arizona protecting employees from the retaliatory termination of employment.

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 as this matter involves a federal question under the Civil Rights Act of 1871, 42 U.S.C. §1983.

3.    This Court has supplemental jurisdiction over Plaintiff's state law claims because said claims are so related to Plaintiff's federal claim that they form part of the same case or controversy pursuant to 28 U.S.C. §1367.

4.    As the unlawful practices complained of herein occurred within Coconino County, venue is proper in this Court.

5.    Plaintiff timely served a statutory Notice of Claim dated June 13, 2019 on Defendant County pursuant to A.R.S. §12-821.01 and A.R.S. §11-622(A).

**PARTIES**

6.    Plaintiff Gary Pearlmutter is a married man and currently resides in Coconino County, Arizona.

7.    Defendant Coconino County (hereinafter "County") is a governmental entity.

8.    Defendant County was Plaintiff's employer from September 1993 until January 4, 2019.

9.    Defendant James Jayne ("Defendant Jayne") at all times relevant herein was/is an employee of Defendant County as the County Manager and is, upon information and belief, a married man who resides in Coconino County, Arizona.   All acts of Defendant Jayne were done on his own personal behalf/capacity and/or on behalf of his marital community under the color of state law.

10.    Defendant Marie Peoples ("Defendant Peoples") at all times relevant herein was/is an employee of Defendant County as Director the of the Public Health Department or the Deputy County Manager and is, upon information and belief, a married woman who resides in Coconino County, Arizona.    All acts of Defendant Peoples were done on her own personal behalf/capacity and/or on behalf of her marital community under the color of state law.

11.     Jurisdiction and venue are proper in this court as all the events alleged herein occurred in Coconino County, Arizona.

## **FACTUAL ALLEGATIONS**

### *a.  The December 4 Parking Lot Incident and Plaintiff's Termination*

12.     Plaintiff was hired by Defendant County in September 1993 as Deputy Public Defender.

13.     In 1999, Plaintiff was selected as one of the first deputies when the Legal Defender's Office was created.

14.     In 2005, Plaintiff was appointed Director of Legal Defender's Office.  He remained in this position until December 2018. As Director of Legal Defender's Office, Plaintiff was the administrator for indigent legal services, including providing representation for persons who face civil commitment proceedings for mental disabilities.

15.     Prior to his termination, Plaintiff was never disciplined and had always received positive feedback regarding the fulfilment of his role as the Director of Legal Defender's Office.

16.     On December 4, 2018, citizen Rachael Simukonda, and her adult daughter, Domonique Durbin, parked their vehicle in a spot designated as "Employee  Parking Only" and "Reserved for Coconino County Legal  Defender's Office" at or around 1:00 p.m. at what was known as the "Ice House Building."

17.     Plaintiff and his staff typically parked their vehicles in that reserved location spot.  Plaintiff observed  the vehicle owned by Ms. Simukonda was still parked in that reserved parking space and hour later and parked his sedan vehicle approximately  five feet behind Ms. Simukonda's vehicle. Due to limited reserved parking spaces, this was a practice of  many others who utilized the Ice House Building.

18.     Ms. Simukonda and her daughter returned to their vehicle just before 3:00 pm and they began to try to maneuver their vehicle out of the reserved parking spot.

-3-

19.     Plaintiff observed Mr. Simukonda's attempts to maneuver her vehicle from his office window.  He became concerned about Ms. Simukonda's vehicle colliding with his vehicle as she attempted to move out of the reserved parking location and made contact with Ms. Simukonda from the second-floor veranda. The contact was made from 10-12 feet away from Ms. Simukonda and was witnessed by her daughter who was outside the vehicle directing her mother.

20.     Ms. Simukonda stated she was handicapped and could park wherever she wanted and rolled up her window.

21.     Plaintiff got into his vehicle to move it, however, Ms. Simukonda continued to try to maneuver her vehicle out of the reserved parking spot. Plaintiff became concerned about this latest maneuver.  Plaintiff backed his vehicle approximately nine to twelve inches and exited it to retrieve his cell phone from inside his office, so he could take photos to document the illegal parking and any possible damaged to his vehicle.

22.      Upon Plaintiff stepping out of his vehicle, Ms. Simukonda's daughter stated the right rear side of his car touched her, although she had been off to the side of his vehicle in order to assist her mother with the moving of Ms. Simukonda's vehicle.

23.     Plaintiff's vehicle has a rear-view camera, which did not show Ms. Domonique Durbin behind his vehicle. In addition, the proximity alarm for people or objects was never activated during Plaintiff's back-up.  Plaintiff also observed that she had no dirt on her pants from the dirt on Plaintiff's vehicle.

24.     Plaintiff then entered the Ice House Building to retrieve his cell phone. Shortly after, Ms. Damonique Durbin also climbed the set of stairs and went into the same building.

25.     Plaintiff returned a few minutes later and took photos with his cell phone.  He then moved his vehicle and Ms. Simukonda moved her vehicle across the street, and Ms. Damonique Durbin joined her mother shortly after.

26.     Ms. Simukonda filed a police report with Flagstaff Police Department on December 5, 2018. Ms. Simukonda reported that Plaintiff was yelling and screaming at her

vehicle's window, and that Plaintiff followed Ms. Damonique Durbin into the Ice House Building.  The statements made to Flagstaff Police Department by Ms. Simukonda and her daughter were not supported by the video obtained by Flagstaff Police Department.

27.     Plaintiff was placed on administrative leave on December 7, 2018 pending an investigation concerning allegations of misconduct by the County Manager, Defendant  Jayne relating to the December 3, 2018 situation.

28.     On December 7, 2018, Plaintiff met with Defendant  Peoples, Deputy County Manager, and Ms. Erika Philpot, Director of Human Resources. Plaintiff was informed the County was in receipt of the police report by Ms. Simukonda and placed him on paid administrative leave pending an investigation.

29.     On December 19, 2018, Plaintiff sent an email to Defendant Peoples and Ms. Philpot and offered them a copy of his statement to Flagstaff Police Department and the video of the incident.

30.     Defendant Peoples responded to the email on December 20, 2018 instructing Plaintiff to meet with her the next day at the County Manager's Office.

31.     On December 21, 2018, Plaintiff went to the County Manager's Office as requested. Defendant Peoples was present for the meeting, along with Defendant  Jayne and Ms. Philpot. Plaintiff offered the Flagstaff police report and the video, but they informed him that they had no interest in seeing those items. They presented the Plaintiff with a Notice of Termination of  Employment and informed him that he would be terminated if he did not resign or retire.

32.     Plaintiff requested additional time to consider his option of resignation or retirement, and was initially told "no."

33.     Left with no choice as he was told he was terminated from his position, Plaintiff decided he would probably just resign and they asked him to draft a letter of resignation.  Ms. Philpot suggested a resignation date of January 4, 2019, so the Plaintiff could have time to determine his retirement benefits, in light of the holidays and provide a letter of resignation.

Plaintiff provided a handwritten note delineating he intended to resign by January 4, 2019 and that he would provide a formal notice of resignation.

34.     At the time of the December 21, 2018 termination meeting, neither Defendants Jayne or Peoples had the authority to terminate Plaintiff's employment.

35.     On December 21, 2018, the Flagstaff Police Department forwarded the police report regarding the parking lot incident to the Mohave County Attorney's Office for review. It referred the matter to its Chief Deputy County Attorney.

36.     On December 31, 2018, Plaintiff learned that the Chief Deputy County Attorney determined there was no basis for any charges to be made against him with regard to incident with Ms. Simukonda and her daughter.

37.     Prior to and on January 4, 2019, Plaintiff never provided a letter of resignation.

38.     Even though Plaintiff never submitted a letter of resignation nor spoke to anyone at Defendant County confirming his resignation, Defendant County, through the County Manager, placed on the consent agenda a request that the Board accept Plaintiff's resignation.   The Board of Supervisors accepted Plaintiff's non-existent "resignation" as part of the consent agenda.

39.     Plaintiff was not provided any notice that his termination was placed on the Board of Supervisor's agenda.

b.     *Plaintiff's Report of Illegal Conduct and Waste of County Resources*

40.     In late summer/early fall of 2018, Plaintiff met with Defendant  Jayne, the County Manager, and reported a continuing suspected sexual relationship between a women juvenile detention officer and juvenile detainee at a County facility.  At the time, Defendant Jayne was unaware of the ongoing sexual misconduct.  However, the Director of Juvenile Probation had been aware of the sexual misconduct for several weeks and failed to report the conduct to the County Manager's office and Defendant Jayne in particular.

41.     A similar incident of sexual misconduct with another women juvenile detention officer and juvenile detainee occurred back in April of 2016.  Plaintiff met with County

Management and at that time also reported that incident. It followed a similar pattern where the Director of Juvenile Probation had failed to provide notice to management, take appropriate legal/criminal action, and appeared to conceal what was occurring.  Like the incident in 2018, County Management had been unaware of this incident and the Director of Juvenile Probation had also been aware of this sexual misconduct for a few weeks.  Plaintiff's office  became aware of the situation back in 2016, upon the arrest of the juvenile in Phoenix at a residence, where the woman juvenile detention officer was staying with him and like the situation in 2018 reported the information to the then County Manager.

42.     Defendant  Jayne never followed up with Plaintiff about his report, even though he did tell Mr. Jayne about the 2016 incident and the apparent failure by the County to take appropriate action against the detention officer in similar situation.  Much to Plaintiff's surprise, Defendant  Jayne asked no questions.  His  affect was flat, seemed disinterested, bothered, and dismissive of Plaintiff's report.  At the end of the meeting, which was  short, he curtly  said "Thank you" to the Plaintiff.

43.     To the best of Plaintiff's knowledge, no one followed up on his reports. Mr. Pearlmutter did learn later that both women juvenile detention officers stopped working for the County.  No charges were ever brought against them even though their activities were criminal in nature.

44.     Plaintiff also later learned that Defendant Jayne, who also was the former Manager of Navajo County, had encountered a similar situation with an adult detention officer and an inmate in the Navajo County Jail.  This incident became well known publicly in Navajo County and caused embarrassment to the Navajo County leaders.

45.     In 2017, Plaintiff initiated an effort to begin work on a project designed to reduce the number of civil commitments for mental health disabilities in light of the nearly doubling of commitments in the prior five-year period.

46.     Plaintiff's initial efforts to even get Defendant County to even study the issue were rebuffed by management even though a reduction in civil commitments would result in

significant cost savings for the County and permit the County to access federal and state funds to assist with the costs related to dealing with individuals with mental health disabilities.

47.    Plaintiff brought the issues relating to the need to study the civil commitment system and potential costs savings to Defendant Jayne first in the summer and early fall of 2017.  Plaintiff continued to speak about the need to study the system and was ignored.  Plaintiff specifically spoke with Defendant Jayne on several other occasions about the need to study the system and possible savings of hundreds of thousands of dollars. He promised to follow up and discuss it with him, but never did.

48.    Additionally, he had brought his proposals for cost savings and concerns to the attention of Defendant Peoples in light of her position in charge of the public health department in the County.  This occurred on numerous occasions with latest being in August 2018.  On each occasion, Defendant Peoples rejected and/or ignored Plaintiff's suggestions on how the County could avoid wasting funds.

49.    Defendant Peoples rejected Plaintiff's proposals claiming it would add additional work to Steward Health Choice (a provider) and the Guidance Center, notwithstanding the potential cost savings for the County and taxpayers.  The County Manager's Office instructed the Plaintiff to cease and desist his efforts, without any discussion with him.

50.    Upon becoming the Deputy County Manager in November 2018, Ms. People still retained responsibilities for the public health department, along with overseeing  the Legal Defender's Office.

51.    Ultimately, Defendants Peoples and  Jayne were the two individuals who made the decision to terminate Mr. Pearlmutter in December 2018, even though the investigation of alleged misconduct had not been completed.

52.     Ultimately both were responsible for providing the Board of Supervision information claiming that Plaintiff had resigned, even though Plaintiff never submitted a resignation letter.

## COUNT ONE

### VIOLATION OF THE AEPA

### (Against Defendant County Only)

53.     Plaintiff incorporates all preceding paragraphs into this Count by reference as fully stated herein.

54.     Under the Arizona Employment Protection Act, A.R.S. §23-1501 ("AEPA"), an employee has a claim against an employer arising out of the termination of their employment if:

> c)  The employer has terminated the employment relationship in retaliation for: . . .
> (ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

55.     Plaintiff had a reasonable belief that his reports to Defendant Jayne of potential sexual misconduct between female detention officers and juveniles constitutes a good faith report of illegal activities.

56.     Plaintiff notified Defendants of his concern about such illegalities and refused to ignore his duties and obligations as a citizen and as the Director of Legal Defender's Office.

57.     Plaintiff's employment was terminated, in part or in whole, in retaliation for his report of such illegal activities.

58.     The reason for Plaintiff's forced resignation was false and merely a pretext.

59.     The termination of Plaintiff's employment and claim that he had resigned, when Plaintiff never submitted a letter of resignation, was a violation of AEPA's protection against retaliation for Plaintiff's good faith report that Defendants were violating the law.

60.     As a result of Defendant's violation of the AEPA, Plaintiff has suffered lost wages and the value of benefits to be proven at trial. Such damages are continuing now and into the future.

61.     As a result of Defendant's violation of the AEPA, Plaintiff has sustained damages in the form of severe emotional distress including but not limited to depression, anxiety, loss of self-worth and damage to his reputation.

<u>COUNT TWO</u>

**VIOLATION OF PUBLIC POLICY**

**(Against Defendant County Only)**

62.     By reference hereto, Plaintiff incorporates previous paragraphs hereof as though fully set forth herein.

63.     It is the public policy of the State of Arizona that it is in the public interest that employees should report potential criminal conduct.  Additionally, it is the public interest for public employees to provide information to governmental entities to save and not waste public funds.

64.     Plaintiff engaged in protected activity when he made a good faith reports relating to potential criminal conduct relating to a female juvenile detention officer.  He also made proposals and the need for the study of the civil commitment system in Coconino County in order to potentially save monies and avoid governmental waste.

65.     Defendant County terminated shortly after Plaintiff brought these issues to the two individuals responsible for his termination.

66.     Defendant's termination of Plaintiff's employment was due, in part or in whole, in retaliation for his report of illegal activities and/or providing potential cost savings which is a violation of the public policy of the State of Arizona.  The failure to protect such a policy would create a chilling effect on employees, bringing matters of public concern to their employers in light of the potential fear of losing their employment.

67.     As a direct and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain damages in the form of lost wages and the value of benefits.  Such damages are continuing now and into the future.

68.     As a direct and proximate result of Defendants' conduct, Plaintiff has sustained damages in the form of emotional distress including but not limited to depression, anxiety, and sleeplessness.

## COUNT THREE

### VIOLATION A.R.S. §11-581 AND VIOLATION OF THE AEPA

### (Against Defendant County Only)

64.     Plaintiff incorporates all preceding paragraphs into this Count by reference as fully stated herein.

65.     Plaintiff was forced to resign or be terminated in violation of A.R.S. §11-581 by Defendants  Jayne and  Peoples.

66.     Neither Defendant Jayne nor Peoples had the authority to terminate Plaintiff's employment.

67.     As the County's Legal  Defender, Plaintiff was appointed by the County Board of Supervisors and thus could only be terminated by the Board of Supervisors.

68.     Plaintiff was informed of his termination by Defendant Peoples, Ms. Philpot and Defendant Jayne, not by the Board of Supervisors and thus is a violation of his statutory right to be dismissed only by the Board of Supervisors.

69.     Defendant Jayne and Defendant  Peoples misled the Board of Supervisors by claiming that Plaintiff resigned his position even though the Plaintiff never provided a letter of resignation and placed  Plaintiff's termination on the consent agenda as a "resignation."

70.     Moreover, Plaintiff never received proper notice that his termination was being considered by the Board of Supervisors.

71.     As said termination is a violation A.R.S.§11-581, the termination violates the AEPA, specifically A.R.S. §23-1501(A)(3)(b).

72.     As a result of Defendant County's termination of Plaintiff and failure to provide Plaintiff with his statutory required process of having the Board of Supervisors decide whether Plaintiff should be terminated, Plaintiff has suffered lost wages and the value of benefits to be proven at trial. Such damages are continuing now and into the future.

73.     Also, as a result of Defendant's actions, Plaintiff has sustained damages in the form of severe emotional distress including but not limited to depression, anxiety, loss of self-worth and damage to his reputation.

## **COUNT FOUR**

### **VIOLATION OF  42 U.S.C. §1983 – DUE PROCESS**

### **(Against All Defendants)**

74.     By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

75.     Plaintiff  was a public employee employed by Defendant County.

76.     Defendant County is a public entity.

77.     Defendants Jayne and Peoples are public employees acting in their individual capacity under the color of state authority.

78.     Plaintiff had a property interest in his position to only be terminated by the Coconino County Board of Supervisors.

79.     Defendants worked, individually and/or, upon information and belief in concert to deprive Plaintiff of the right to Due Process guaranteed by the United States Constitution when

Plaintiff's employment was terminated by Defendants Jayne and Peoples, and not by the County Board of Supervisors as provided by A.R.S. §11-581.

80.     Defendants' actions were under the color of state law.

81.     Plaintiff was terminated from his employment as he had not provided a written retirement or resignation to the County by January 4, 2019.

82.     Notwithstanding that information, Plaintiff was not permitted any Due Process rights to have his employment status considered and determined by the Coconino County Board of Supervisors.

83.     Moreover, the action of accepting the non-existent "resignation" of Plaintiff by the Board of Supervisors was done with no notice of Plaintiff.

84.     Said conduct violations the Civil Rights Act of 1871, 42 U.S.C. §1983.

85.     As a direct and proximate result of Defendants actions, Plaintiff Pearlmutter has suffered loss of income and the value of benefits.

86.     Plaintiff has also suffered emotional distress, anxiety, embarrassment, humiliation, denial of processional standing and reputation, deprivation of the right to due process, and the loss of ordinary pleasures of life as a result of Defendants' conduct.

87.     Defendant Jayne's and Defendant Peoples' actions were willful and wanton and conducted with an evil mind designed to deprive Plaintiff of his protected constitutional rights as to entitle Plaintiff Pearlmutter to recover punitive and exemplary damages.

88.     Plaintiff Pearlmutter is entitled to an award of attorneys' fees pursuant to 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff demands judgment against Defendants, individually and jointly, as follows:

a.     General and Special damages to be proven at trial;

b.     Compensatory damages to be proven at trial;

c.     Punitive or Exemplary damages (Defendants Jayne and Peoples only);

d.      Costs of suit; and

e.      Such other and further relief as this Court deems just and proper.

### **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all claims and issues so triable.


DATED this <u>18</u><sup>th</sup> day of December 2019.

SCHLEIER LAW OFFICES, P.C.


<u>/s/ Bradley H. Schleier</u>
Bradley H. Schleier, Esq.
*Attorneys for Plaintiff Gary Pearlmutter*